**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **z4 TECHNOLOGIES, INC.** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:06-CV-142** |
| | § | |
| **MICROSOFT CORPORATION,** | § | |
| **AND AUTODESK, INC.** | § | |
| | § | |
| **Defendants** | § | |

**CHARGE OF THE COURT**

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must

apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the

judges of the facts.  Do not consider any statement that I have made during the trial or make in these

instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing

arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on

the law.  They are intended only to assist the jury in understanding the evidence and the parties'

contentions.

**1. GENERAL INSTRUCTIONS**

Answer each question from the facts as you find them.  Do not decide who you think should

win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise

instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

## 1.1 Considering witness testimony

By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.  As stated before, you the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We met because often during a trial something comes up that does not involve the jury.  You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you

2

need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

## 1.2 How to examine the evidence

Certain testimony in this case has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness' testimony may be presented, under oath, in the form of a deposition.  Some time before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weigh and otherwise considered by you insofar as possible the same as if the witness had been present and had testified from the witness stand in court.

With regard to documents, if you find that a party has lost or destroyed any documents in bad faith, you may, but are not required to, infer that such evidence would have been unfavorable to that party.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

Except for the issues of conception, diligence, and reduction to practice, discussed later, the testimony of a single witness may be sufficient to prove any fact, even if a greater number of

witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence – such as testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

## 1.3 Expert witnesses

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he or she testifies regularly as an expert witness and that income from such testimony represents a significant portion of the expert's income.

## 2. STIPULATIONS

The parties have agreed, or stipulated to the following facts.  This means that both sides agree that these are facts.  You must therefore treat these facts as having been proved.

1.      The first patent-in-suit is U. S. Patent No. 6,044,471, which is sometimes referred to as "the

'471 patent."  The '471 patent is assigned to z4 Technologies, Inc., the Plaintiff in this case. The '471 patent was issued on March 28, 2000.

2.      The second patent-in-suit is U. S. Patent No. 6,785,825, which is sometimes referred to as "the '825 patent."  The '825 patent is assigned to z4 Technologies, Inc., the Plaintiff in this case.  The '825 patent was issued on August 31, 2004.

3.      The asserted claim of the '471 patent is claim 32.

4.      The asserted claims of the '825 patent are claims 44 and 131.

## 3. SUMMARY OF CONTENTIONS

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on these issues.

### 3.1 z4's Contentions

z4 contends that Microsoft directly infringes claim 32 of the '471 patent and claims 44 and 131 of the '825 patent and Microsoft's infringement is willful.  z4 contends that Autodesk directly infringes claim 32 of the '471 patent and claim 131 of the '825 patent.  z4 asks you to award damages for the infringement.

### 3.2 Microsoft's and Autodesk's Contentions

Microsoft and Autodesk contend that z4's patents are not infringed by Autodesk or Microsoft and that z4's patents are invalid.

### 3.3 Burdens of Proof

z4 has the burden of proving infringement by a preponderance of the evidence. "Preponderance of the evidence" means evidence that persuades you that a claim is more likely true than not true. In determining whether any fact has been proved by a preponderance of the evidence,

5

you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.  If the proof establishes that all essential parts of z4's infringement claim are more likely true than not true, then you should find for z4 as to that claim.  If you find that Microsoft and Autodesk infringed one or more of z4's patent claims, then z4 has the burden of proving its additional contention that the infringement was willful by clear and convincing evidence, which I will define for you.

Microsoft and Autodesk have the burden of proving invalidity by clear and convincing evidence. "Clear and convincing evidence" means evidence that produces in your mind a firm belief or conviction as to the matter at issue.  In determining whether any fact has been proved by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.  Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.  If the proof establishes in your mind a firm belief or conviction that Microsoft's and Autodesk's invalidity claims are correct, then you should find for Microsoft and Autodesk as to such claim or claims.

### 3.4 Glossary of Patent Terms

The following are definitions for patent terms that you should use in this case.

Application – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "Patent Office" or "PTO").

Claims – Claims are the numbered sentences appearing at the end of the patent that define

the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

Comprising – The beginning, or preamble, portion of each of the asserted independent claims uses the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" is not limited to products or methods having only the elements that are recited in the claim limitations, but also covers products or methods that have all of the elements and add additional elements without changing the required limitations.

Take as an example a claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs. However, if a table contains a tabletop, legs, but no glue, then the claim does not cover the table.

File Wrapper - See prosecution history below.

License – Permission to use the patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other consideration.

Office Action – Communication from the patent examiner regarding the specification of the patent application and/or the claims pending in the patent application.

Patent Examiners – Personnel employed by the United States Patent and Trademark Office ("PTO") who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention.

Prior art – Knowledge that is available to the public either prior to the invention by the applicant or more than a year prior to the effective filing date of his/her patent application.

Prosecution history – The written record of proceedings in the United States Patent and Trademark Office ("PTO") between the applicant and the PTO.  It includes the original patent application and later communications between the PTO and the applicant.  The prosecution history may also be referred to as the "File wrapper" of the patent during the course of this trial.

References - Any item of prior art used to determine patentability.

The – Use of the word "the" in the beginning of a phrase indicates that it is referring to a previous use of the same or a similar phrase.

Specification – The specification is the information, which appears in the patent and concludes with one or more claims.  The specification includes the written text, the claims and the drawings.  In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so.

Ordinary Skill in the Art

From time to time in these instructions I will refer to a hypothetical person of "ordinary skill in the art."  This hypothetical person is presumed to be aware of all of the prior art and knowledge that existed in the field during the relevant time period.  The skill of the actual inventor and experts is irrelevant, because they may possess something that distinguishes them from workers of ordinary skill in the art.  Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the art, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

## 4. CLAIMS OF THE PATENTS IN SUIT

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences

at the end of the patent.  The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing.  Claims may describe products, such as machines or chemical compounds, or processes for making or using a product.

Claims are usually divided into parts or steps, called "limitations" or "elements."  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs on the tabletop.  The tabletop, legs and glue are each a separate limitation of the claim.

## 4.1 Construction of the Claims

In deciding whether or not an accused product or method infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use those meanings when you decide whether or not the patent claims are infringed, and whether or not it is invalid.  Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.  It may be helpful to refer to the copies of the '471 and '825 patents that you have been given as I discuss the claims at issue here.

## 4.2 Interpretation of Claims

In deciding whether or not an accused product or method infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

As I stated earlier, it is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  In accordance with that duty, I have interpreted the meaning of

some of the language in the patent claims involved in this case.  My interpretation of those claims appear in Appendix A to this charge.  Within the text of the claims of each patent-in-suit, I have bolded and underlined the terms which I have defined for you.  You must accept as correct the interpretations contained in Appendix A as defined by the Court. The claim language I have not interpreted for you in Appendix A is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.

## 4.3 Limitations of the Claims at Issue

The meaning of some of the words used in the patent claims at issue which the Court interpreted are as follows:

The '471 Patent

The phrase "instructions for automatically contacting an authorized representative of the software" means "instructions (i.e., a computer code) that enable a user's computer to contact an authorized representative of the software."

The '825 Patent

The phrase "at least partially disabling the software if the user is determined to be an unauthorized user" means "partially or completely limiting the use of the software if the user is determined to be an unauthorized user."

Both Patents

"user" means "a person, a person using a computer, a computer, or computers."

10

## 5. INFRINGEMENT

In this case, z4 asserts that Microsoft and Autodesk have infringed the patents-in-suit.  Any person or business entity that, without the patent owner's permission, makes, uses, offers for sale, or sells within the United States any product or method that is covered by at least one claim of a patent, before the patent expires, infringes the patent.  z4 has the burden of proving infringement by a preponderance of the evidence.

A person can infringe a patent without knowing that what it is doing is an infringement of the patent.  It may also infringe even though in good faith it believes that what it is doing is not an infringement of any patent.

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.  If any person makes, uses, sells or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.  This type of infringement is called "direct infringement."

Only the claims of a patent can be infringed.  You must compare each of the asserted patent claims, as I have defined them, to the accused products, and determine whether or not there is infringement.  You should not compare Defendants' products with any specific example set out in the patents.  The only correct comparison is with the language of the claim itself, with the meaning I have given you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

Whether or not Microsoft and Autodesk knew that what they were doing was an infringement

11

does not matter.  A person may be found to be a direct infringer of a patent even if he or she believed in good faith that what he or she was doing was not an infringement of any patent, and even if he or she did not even know of the patent.

In this case, z4 asserts that Microsoft's and Autodesk's products directly infringe the asserted claims of the patents-in-suit.  It is your job to determine whether or not z4 has proved by the "preponderance of the evidence" standard that defendant has directly infringed any of the asserted claims.

## 5.1 Literal Infringement

To determine literal infringement, you must compare the accused product or method with each claim that z4 asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if Microsoft and Autodesk's product or method includes each and every element in that patent claim.  If Microsoft or Autodesk's product or method does not contain one or more of the limitations recited in a claim, Microsoft or Autodesk do not literally infringe that claim.  If you find that Microsoft or Autodesk's product or method includes each element or step of the claim, then Microsoft or Autodesk infringes the claim even if the product contains additional elements or steps that are not recited in the claim.

You must consider each of the asserted claims of the patents-in-suit individually, and decide whether Microsoft and Autodesk's product or method infringes that claim.  You must be certain to compare Microsoft and Autodesk's accused products with each claim that it is alleged to infringe. It should be compared to the limitations recited in the patent claim, not to any preferred or commercial embodiment of the claimed invention.

You have heard argument in this case about Microsoft's use of its own '468 patent regarding

12

a method for decreasing unauthorized use of software.  Even though Microsoft may be practicing the claims of its patent relating to unauthorized use of software, the issuance to Microsoft of a patent covering the same alleged method does not avoid infringement of earlier issued patents.  The issuance of a patent only affords its owner the right to exclude others from practicing the patent claims, but not an affirmative right to practice its patent.  A party may obtain a patent on improvements or modifications to a device or method, even though the improved device or method infringes previously issued patents.

Taking each claim of the patents separately, if you find that z4 has proved by a preponderance of the evidence that each and every limitation of that claim is present in any of the accused products, then you must find that those products infringe that claim.

## 5.2 Willful Infringement

z4 contends that Microsoft willfully infringed the '471 and '825 patent claims.  If you find on the basis of the evidence and the law as I have explained it, that Microsoft infringes at least one asserted claim of a patent-in-suit, then you must decide for that patent whether or not Microsoft's infringement was willful.

When a person or company becomes aware that a patent may have relevance to  its activities, they have a duty to exercise due care and investigate whether or not their activities or proposed activities infringe any valid claim of the patent.  If they did not do this and are found to have infringed the patent claims, then the infringement was willful.

Although, as I explained before, z4 must prove infringement by the preponderance of the evidence standard, the burden of proving that the infringement was willful is the clear and convincing evidence standard.

13

To establish willful infringement, z4 must prove two things by clear and convincing evidence.  First, for each patent-in-suit for which z4 contends Microsoft's infringement was willful, z4 must prove that Microsoft was aware of that patent.  Generally, for an accused party to willfully infringe a patent, the patent must exist or, in other words, be issued by the Patent Office.  Second, z4 must prove that Microsoft proceeded with the activities that are accused of infringement without a good faith belief that the patent was either invalid, not infringed, or both.

In determining whether or not Microsoft acted in good faith, you should consider all of the circumstances.  The totality of the  circumstances comprises a number of factors, which include, but are not limited to: whether Microsoft made a good faith effort to avoid infringing the patents, whether Microsoft obtained and followed the advice of a competent lawyer, and Microsoft's behavior as a party to this litigation.  Although the absence of a lawyer's opinion does not require you to find willfulness, the obtaining and following of a lawyer's advice may be evidence that infringement was not willful.

In evaluating Microsoft's reliance on the advice of a lawyer, you should consider when Microsoft  obtained the advice, the quality of the information Microsoft provided to the lawyer, the competence of the lawyer's opinion, and whether or not Microsoft relied upon the advice.  Advice is competent if it was based upon a reasonable examination of the facts and law relating to validity and/or infringement issues, consistent with the standards and practices generally followed by competent lawyers.

The fact that you may have determined that Microsoft was wrong and that one or both patents is infringed does not mean that Microsoft's infringement was willful.  All that is required to avoid a finding of willful infringement is that Microsoft had a good faith belief that it did not infringe or

that the patent was invalid and that its belief was reasonable under all of the circumstances.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages, if any, to which z4 may be entitled.  A finding of willful infringement may, in certain circumstances, entitles the patent owner to increased damages.  If you decide that Microsoft willfully infringed the '471 or '825 patent claims, then it is the Court's job to decide whether or not to award increased damages to z4.  You should not consider willful infringement in making your damage award, if any.

## 6. INVALIDITY

Only a valid patent may be infringed.  For a patent to be valid, the invention claimed in the patent must be new, useful, and non-obvious.  A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made.  The terms "new," "useful," and "non-obvious" have special meanings under the patent laws.  I will explain these terms to you as we discuss Microsoft's and Autodesk's grounds for asserting invalidity.

Microsoft and Autodesk have challenged the validity of the '471 and '835 patent claims on a number of grounds.  Microsoft and Autodesk must prove that a patent claim is invalid by clear and convincing evidence.  An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing a patent.

I will now explain to you each of Microsoft's and Autodesk's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

## 6.1 Prior Art

Autodesk and Microsoft are relying on the following items they say are prior art:

Brazilian Publisher; AutoCAD R13; AutoCAD R13c4a NewZealand; CD-Secure2; CAD+

15

Article "Autodesk Opts for Encryption", January 1997; AutoCAD R13 UNIX, AutoCADR14.

Autodesk and Microsoft must prove by the "clear and convincing" standard that these items are prior art. To do so, Autodesk and Microsoft must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include:

First, anything that was in public use or on sale in the United States more than one year before the application for the patent was filed.

Second, anything that was patented or described in a printed publication anywhere in the world before the inventor made the invention, or more than one year before the application for the patent was filed.

Third, anything that was invented by another person in the United States before the inventor made the invention, if the other person did not abandon, suppress or conceal his or her prior invention.

### 6.1.1 Prior Art-Date of Invention

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice." An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice." In this case, that date is June 4, 1998. Art that came before the application's filing date is prior art to the patent claims,

unless Colvin conceived of the invention before the date of the art and exercised reasonable diligence from just before the date of the art up to the date of Colvin's reduction to practice.  In that case, the art is not prior art to the Colvin patents.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose.  Reasonable diligence means that the inventor worked continuously on reducing the invention to practice including by diligently filing a patent application.  Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of diligence.

I will now describe the specific requirements for the prior art categories relied on by Microsoft and Autodesk in this case.

## 6.2 On Sale or Public Use

A patent claim is invalid if the invention recited in the claim was in public use or on sale in the United States more than one year before the first United States patent application was filed.  A sale or public use outside of the United States does not invalidate the claim under this specific category of anticipation.  Microsoft and Autodesk must prove by clear and convincing evidence that a claim is anticipated by public use or sale.

In this case, Microsoft and Autodesk contend that z4's claimed inventions were in public use or on sale in the United States more than one year before the first United States patent applications.  Those prior art reference is AutoCAD R14.  If you find that Microsoft and Autodesk have proven that the inventions were in public use or on sale in the United States more than one year before the first United States patent application was filed, then you must find those asserted claims invalid.

17

### 6.3 Anticipation for Lack of Novelty

A patent claim is invalid if the claimed invention is not new.  For a claimed invention to be invalid as not new, all of its requirements must be in a single previous device or method, or described in a single previous publication or patent.  We call those things "prior art references."  To anticipate, the description in a reference does not have to be in the same words as the claim, but all the limitations must be there, either expressly or inherently, so that someone of ordinary skill in the field looking at that one reference would have everything necessary to make and use the claimed invention.  Something is inherent in an item of prior art if it is always present in the prior art, or always results from the practice of the prior art.

Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing may coincidentally result from a given set of circumstances is not sufficient. A party claiming anticipation by inherency must show that the elements of the claim are always present in the prior art or always result from the practice of the prior art.  Microsoft and Autodesk must prove by clear and convincing evidence that the inventions recited in these claims of the '471 and '825 patents are inherently present in Defendants' prior art and the other prior art relied upon by the Defendants.  You may not combine two or more items of prior art to make out an anticipation.

Microsoft and Autodesk must prove Anticipation for Lack of Novelty by clear and convincing evidence.

### 6.4 Anticipation by Prior Invention

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee, and that other person did not abandon, suppress or conceal the invention. In this case, Microsoft and Autodesk contend that

Brazilian Publisher 98 and AutoCAD R-13 C4A New Zealand are prior art under this section.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor.  An invention is reduced to practice either when a patent application is filed or when the invention is made and shown to work for its intended purpose.  Thus, if another person reduces to practice an invention before the inventor on the patent, then the reduction to practice by the other person will be prior art to the patent claims.

A patentee who is not the first to reduce to practice can still be the first to invent if he can show two things:

1.      that he conceived of the invention before the other party conceived of his invention; and

2.      that he exercised reasonable diligence in reducing his invention to practice, from the time just before the other party conceived, to the time he reduced to practice.

Reasonable diligence means that the inventor worked continuously in the United States on reducing the invention to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or those working with him or her do not prevent a finding of diligence.

### 6.4.1 Anticipation by Prior Invention – Conception

Conception is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied and practiced.  A conception must encompass all limitations of the claimed invention and is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.

An inventor's testimony of conception must be corroborated in a single document.   A

19

document used to corroborate conception need not, itself, be corroborated.

### 6.4.2 Anticipation by Prior Invention – Reduction to Practice

As a general rule, the first person to reduce an invention to practice in the United States is said to be the first inventor. An invention is reduced to practice either on the date a patent application is filed or on the date the invention is made and shown to work for its intended purpose in the United States.

To prove that a prior invention was reduced to practice on a particular date, the inventor must show two things by clear and convincing evidence:

(1)     the inventor constructed a product or performed a process in the United States that met all the limitations of each asserted claim; and

(2)     the inventor himself knew that the invention would work for its intended purpose.

A prior invention that does not meet all the limitations of an asserted claim cannot anticipate that claim.  Similarly, if other alleged inventor(s) did not determine that the invention would work for its intended purpose before June 4, 1998, the invention was not reduced to practice before that date.

### 6.4.3 Anticipation by Prior Invention – Corroboration

Microsoft and Autodesk must provide independent corroboration of an inventor's testimony of reduction to practice. Sufficiency of corroboration is determined by using a "rule of reason" analysis, under which all pertinent evidence is examined when determining the credibility of an inventor's testimony. Independent knowledge is the key to corroboration.

Oral testimony from interested witnesses is not sufficient to corroborate reduction to practice. Corroboration must be done using documents.

You should consider whether any documents relied upon are authentic and whether they have been witnessed by someone other than the inventor. An unwitnessed document, or a document witnessed only by an interested person, is not sufficient on its own to support a claim of reduction to practice.

## 6.5 Anticipation by another patent

An issued patent may be prior art to a patent claim under a number of different circumstances. First, a patent issued anywhere in the world, like a printed publication, may be prior art to a patent claim if the patent issued before Colvin's filing date for his patents.

However, a U.S. patent may be prior art to a patent claim, even if the patent issued after the date of invention of a claimed invention. This occurs when another person filed the U.S. patent application before the inventor made the claimed invention. If the filing date of the U.S. patent is after the Colvin's conception date, the patent is not prior art provided that Mr. Colvin and his attorneys were reasonably diligent in reducing the invention to practice.

In this case, Defendants rely on United States Patent No. 6,243,468 (the "'468 patent" or "Pearce patent") as a prior art patent application to the asserted patent claims. If you find that Defendants have proven by clear and convincing evidence that this prior art discloses Colvin's claimed invention, and was filed before Colvin made his invention, then you must find those claims invalid.

## 6.6 Obviousness

Microsoft and Autodesk contend that various claims of the patents-in-suit are invalid because the claimed invention was obvious to one of ordinary skill in the art at the time the invention was made. To be patentable, an invention must not have been obvious to a person of ordinary skill in

the pertinent art at the time the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. Autodesk and Microsoft have the burden of proving by clear and convincing evidence that clam 32 of the '471 patent and claims 44 and 131 of the '825 patent are invalid for obviousness. Each claim must be considered separately.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you as a layman, to me as a Judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art. Microsoft and Autodesk bears the burden of proving this defense by clear and convincing evidence.

You must not use hindsight when comparing the prior art to the invention for obviousness. In making a determination of obviousness or non-obviousness, you must consider only what was known before the invention was made. You may not judge the invention in light of present day knowledge or by what you learned from or about the patents during trial.

If the prior art merely discloses numerous possible combination but gives no direction as to which of those main choices is likely to be successful, this does not constitute a prior teaching or suggestion of the claim combination. Similarly, if the prior art merely discloses that it would be obvious to explore a new technology or general approach that seemed to be a promising field of experimentation, this would not constitute a teaching or suggestion of the claimed combination.

In determining whether or not Microsoft and Autodesk have established obviousness of a

22

claim of the patents-in-suit patent by clear and convincing evidence, you must consider the following:

(1)   The scope and content of the prior art put into evidence in this case;

(2)   The differences, if any, between each claim of the patent and that prior art; and

(3)   The level of ordinary skill in the art at the time the invention was made.

(4)   Any objective indications of non obviousness.

Against this background, you must decide whether or not the invention covered by the patents claims would have been obvious.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

## 6.6.1 The Scope and Content of the Prior Art

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Autodesk and Microsoft. You must decide whether this prior art was reasonably relevant to the particular problem the inventor was attempting to solve in making the invention covered by the patent claims. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

## 6.6.2 Differences Between the Invention of the Claims and the Prior Art

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of

all of the prior art.

In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestion for a skilled person to make the combination covered by the patent claims. Motivation can be implicit.  In other words, motivation need not be explicit.  You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claims. The question to be answered is: Would someone reading the prior art be discouraged from following the path taken by the inventor?

### 6.6.3 Level of Ordinary Skill

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinarily skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

### 6.6.4 Secondary Considerations

You must also consider what are referred to as objective indications of non-obviousness. Some of these indications of non-obviousness are:

1.      Commercial success of the products or methods covered by the patent claims;

2.      A long-felt need for the invention;

3.      Failed attempts by others to make the invention;

4.      Copying of the invention by others in the field;

24

5.      Unexpected results achieved by the invention;

6.      Praise of the invention by the alleged infringer or others in the field;

7.      The taking of licenses under the patent by others;

8.      Expressions of surprise by experts and those skilled in the art at the making of this invention;

9.      The patentee proceeded contrary to accepted wisdom of the prior art.

The presence of any of these objective indications may suggest that the invention was not obvious.  These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims.  For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims.  If the commercial success is a result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.

If you conclude that the prior art discloses all the elements of the claimed invention, but those elements are in separate items, you must then consider whether or not it would have been obvious to combine those items.  A claim is not obvious merely because all of the elements of that claim already existed.  For you to find an asserted claim obvious, you must find that there was some teaching, suggestion or incentive to combine the items in the prior art into the particular claimed combination.  A suggestion to combine must be clear and particular.  Broad, conclusory statements about the teaching of multiple references standing alone are not evidence of a suggestion to combine.

The prior art also must be complete enough to enable one of ordinary skill in the art to practice the claimed invention without undue experimentation.

**6.6.5 Determination of Obviousness**

Microsoft and Autodesk contend that the inventions claimed in the asserted claims of the patents in suit would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made in light of combinations of the following prior art: Brazilian Publisher; AutoCAD R13; AutoCAD R13c4a NewZealand; CD-Secure2; CAD+ Article "Autodesk Opts for Encryption, January 1997; AutoCAD R13 UNIX, AutoCAD R14.

If you find that the Defendants proved obviousness by clear and convincing evidence, then you must find that the claims are invalid for obviousness.

## 7. DAMAGES

I have now instructed you as to the law governing z4's claims of patent infringement and Microsoft's and Autodesk's claims of invalidity.  If you find that Microsoft and Autodesk have infringed a valid claim of the '471 or '825 patent, then you must determine what damages Microsoft or Autodesk must pay to z4 for that infringement.  If, on the other hand, you find that Microsoft and Autodesk have not infringed a valid claim of the '471 or '825 patent, then z4 is not entitled to any damages, and you should not make any findings about damages for that claim.

The fact that I am instructing you about damages does not mean that z4 is or is not entitled to recover damages.  You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case.  I am instructing you on damages only so that you will have guidance in the event you decide that Microsoft or Autodesk is liable and that z4 is entitled to recover money from either defendant.

### 7.1 Damages – Generally

The type of patent damages z4 is seeking in this case is called a reasonable royalty.  I will

discuss reasonable royalty later in more detail.  Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.

If you find that any claim of the '471 patent or '825 patent is both valid and infringed, then z4 is entitled to damages adequate to compensate for the infringement of that claim.  These damages may not be less than what a reasonable royalty would be for the use made of the invention by Microsoft or Autodesk.  In determining damages, you must decide how much financial harm z4 has suffered by reason of the infringement.  You must decide the amount of money, if any, that z4 would have made had Microsoft and Autodesk not infringed.

The amount of those damages must be adequate to compensate z4 for the infringement.  A damages award should put z4 in approximately the financial position it would have been in had the infringement not occurred.  You may not add anything to the amount of damages to punish Microsoft or Autodesk, or to set an example.

z4 has the burden to persuade you by a preponderance of the evidence that it suffered the damages it seeks.  While z4 is not required to prove damages with mathematical precision, it must prove its damages with reasonable certainty.   z4 is not entitled to damages that are remote or speculative.

## 7.2 Reasonable Royalty

A royalty is the amount of money a licensee pays to a patent owner for each article the licensee makes (or uses or sells) under the patent. A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed upon at the time of the infringement for a license to make the invention.  It is the royalty that would have resulted from an

arms-length negotiation between a willing licensor and a willing licensee, assuming that both parties understood the patent to be valid and infringed and that the licensee would respect the patent.  Unlike a real world negotiation, in the hypothetical negotiation, all parties are presumed to know that the patent is infringed and valid.

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when the infringer first infringed the patent and the facts that existed at that time. Your determination does not depend on the actual willingness of the parties to this lawsuit to engage in such negotiations. Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time of the infringing activity. The infringer's actual profits may or may not bear on the reasonableness of an award based on a reasonable royalty.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) whether the patent holder had an established royalty for the invention; in the absence of such a licensing history, any royalty arrangements that were generally used and recognized in the particular industry at that time;

(2) the nature of the commercial relationship between the patent owner and the licensee, such as whether they were competitors or whether their relationship was that of an inventor and a promotor;

(3) the established profitability of the patented product, its commercial success and its popularity at the time;

(4) whether the patent owner had an established policy of granting licenses or retaining the

28

patented invention as its exclusive right, or whether the patent holder had a policy of granting licenses under special conditions designed to preserve his monopoly;

(5) the size of the anticipated market for the invention at the time the infringement began;

(6) the duration of the patent and of the license, as well as the terms and scope of the license, such as whether it is exclusive or nonexclusive or subject to territorial restrictions;

(7) the rates paid by the licensee for the use of other patents comparable to the plaintiff's patent;

(8) whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his nonpatented items;

(9) the nature of the patented invention and the benefits to those who have used the invention;

(10) the extent to which the infringer used the invention and any evidence probative of the value of that use;

(11) the portion of the profits in the particular business that are customarily attributable to the use of the invention or analogous inventions;

(12) the portion of the profits realized that should be credited to the invention as distinguished from nonpatnted elements, the manufacturing process, business risks or significant features or improvements added by the infringer;

(13) the opinion and testimony of qualified experts and of the patent holder;

(14) any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent owner would have been willing to accept, acting as normally prudent business people.

## 8. INSTRUCTIONS FOR DELIBERATIONS

29

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A corporation is entitled to the same fair trial as a private individual.  All persons, including corporations, and other organizations stand equal before the law and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You

30

must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to deliberate.

**So ORDERED and SIGNED this 18th day of April, 2006.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

## APPENDIX A
## U.S. Patent No. 6,044,471

| Claim Language | Court's Construction |
|---|---|
| 32.  A computer readable storage medium having data stored therein representing software executable by a computer, the computer including instructions to reduce use of the software by unauthorized **users**, the storage medium comprising:<br><br>. . . | a user is a person, a person using a computer, a computer, or computers |
| **instructions for automatically contacting an authorized representative of the software** to communicate registration information and obtaining authorization for continued operation of the software. | instructions (i.e., computer code) that enable a user's computer to contact an authorized representative of the software . . . |

## U.S. Patent No. 6,785,825

| Claim Language | Court's Construction |
|---|---|
| 1.  A method for reducing unauthorized software use, the method comprising:<br><br>. . . | |
| **requiring the user to selectively choose either manual or electronic registration** and provide registration information to the representative prior to retrieval of the at least one additional authorization code, the registration information including computer specific information; . . . | requiring the user to selectively choose either manual or electronic registration . . .<br><br>a user is a person, a person using a computer, a computer, or computers |
| . . . **at least partially disabling the software if the user is determined to be an unauthorized user.** | partially or completely limiting the use of the software if the user is determined to be an unauthorized user<br><br>a user is a person, a person using a computer, a computer, or computers |