**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| **z4 TECHNOLOGIES, INC.** | |
| **v.** | |
| | **6:06-cv-00142-LED** |
| **1. MICROSOFT CORPORATION, and** | |
| **2. AUTODESK, INC.** | |

<u>**MICROSOFT'S MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING**
**DAMAGES, NON-RETAIL PRODUCTS, AND WILLFULNESS**</u>

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..........................................................................................................1

II. LEGAL STANDARDS ..................................................................................................1

III. ARGUMENT ..................................................................................................................1

    A.    Judgment as a Matter of Law with Respect to all Microsoft
           Non-Retail Products is Required Because No Reasonable Jury
           Could Conclude that Microsoft's Non-Retail Products Infringe. ..........................1

    B.    Judgment as a Matter of Law is Required Because Each of the
           Asserted Claims is Either not Infringed or Invalid as a Matter of
           Law. .....................................................................................................................3

    C.    Judgment as a Matter of Law is Required Because No
           Reasonable Jury Could Conclude that Microsoft's Infringement
           Was Willful.........................................................................................................3

    D.    Judgment as a Matter of Law is Required Because No
           Reasonable Jury Could Conclude that the Award of $115
           Million in Damages was Warranted. ...................................................................7

IV. CONCLUSION..............................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Original Corp. v. Jenkins Food Corp.*,
    774 F.2d 459, 463 (Fed. Cir. 1985).................................................................. 9

*Carbo Ceramics, Inc. v. Keefe*,
    No. 04-20873, 2006 WL 197340, at *8 (5th Cir. Jan. 26, 2006) ...................... 10

*Conkling v. Turner*,
    18 F.3d 1285, 1300-01 (5th Cir. 1994) ............................................................. 1

*Conopco, Inc. v. May Dep't Stores Co.*,
    46 F.3d 1556, 1562-63 (Fed. Cir. 1994) ........................................................... 6

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
    192 F.3d 973, 974 (Fed. Cir. 1999)................................................................... 3

*Guile v. United States*,
    422 F.3d 221, 225 (5th Cir. 2005) .................................................................... 1

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
    897 F.2d 508, 510-11 (Fed. Cir. 1990) ............................................................. 4

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
    383 F.3d 1337, 1342 (Fed. Cir. 2004)............................................................ 3, 5

*Mostly Media, Inc. v. U.S. West Communications*,
    186 F.3d 864, 867 (8th Cir. 1999) .................................................................. 10

*Norian v. Stryker Corp.*,
    363 F.3d 1321, 1332 (Fed. Cir. 2004)............................................................... 4

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816, 826-27 (Fed. Cir. 1992), *abrogated on other grounds by
    Markman v. Westview Instruments, Inc.*,
    52 F.3d 967, 975 (Fed. Cir. 1995).................................................................. 3, 4

*Rodime PLC v. Seagate Tech., Inc.*,
    174 F.3d 1294, 1308 (Fed. Cir. 1999).............................................................. 10

*Rolls-Royce Ltd. v. GTE Valeron Corp.*,
    800 F.2d 1101, 1110 (Fed. Cir. 1986)................................................................ 3

*State Indus., Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226, 1236 (Fed. Cir. 1985)................................................................ 6

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558, 1563 (Fed. Cir. 1996)................................................................. 1

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**<u>Page(s)</u>**

**<u>Statutes</u>**

35 U.S.C. Section 67 (1946) .......................................................................................................... 8

35 U.S.C. Section 70 (1946) .......................................................................................................... 8

35 U.S.C. Section 284 (2004) .................................................................................................... 3, 8

Federal  Rules of  Civil. Procedure 50(a)(1) .................................................................................. 1

Federal Rules of Civil Procedure 50(b) ........................................................................................ 1

**<u>Other Authorities</u>**

Hearings on H.R. 5231 (later reported as H.R. 5311) before the House Comm.
    on Patents, 79th Cong., 2d Sess. 2-3 (1946) ....................................................................... 8

## I.      INTRODUCTION

Under Rule 50(b) of the Federal Rules of Civil Procedure, and to preserve the issue for

appeal, Defendant Microsoft Corporation ("Microsoft") renews its motion for judgment as a

matter of law that there was no evidence of damages due to the infringement of any products

outside the retail channel, that Microsoft's infringement, if any, was not willful due to its good

faith defenses to infringement and its consistent use of the technology prior to awareness of or

issuance of either of the patents-in-suit, and that the damages assigned against Microsoft are not

supported by the evidence.

## II.     LEGAL STANDARDS

Judgment as a matter of law ("JMOL") is required where, as here, "a party has been fully

heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find

for that party on that issue."  Fed. R. Civ. P. 50(a)(1); *see Texas Instruments Inc. v. Cypress*

*Semiconductor Corp.,* 90 F.3d 1558, 1563 (Fed. Cir. 1996); *Guile v. United States*, 422 F.3d 221,

225 (5th Cir. 2005).  The Court must grant a motion for JMOL where under the controlling law,

a party's claim or defense may not be maintained or may be defeated without a favorable finding

on that issue.  Fed. R. Civ. P. 50(a)(1).  The Court's decision to grant a JMOL "'is not a matter

of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to

create a fact question for the jury.'"  *See Conkling v. Turner,* 18 F.3d 1285, 1300-01 (5th Cir.

1994).

## III.    ARGUMENT

### A.      Judgment as a Matter of Law with Respect to all Microsoft Non-Retail Products is Required Because No Reasonable Jury Could Conclude that Microsoft's Non-Retail Products Infringe.

There is no evidence that any Microsoft product sold outside of the retail channel

infringes.  The Court, in ruling on the various motions *in limine*, determined that all experts

would be limited to opinions contained within their expert reports and the depositions conducted

of the experts in this case.  (3/23/06 Pretrial Tr. at 43:2-5, Ex. 1.)  As pointed out by counsel for

Microsoft during the pre-trial conference, Plaintiff's technical expert Mr. Rosenblatt did not provide any opinion regarding infringement of any product sold outside the retail channel in his report.  (*Id.* at 41:17-23, Ex. 1.)  Further, Mr. Rosenblatt testified in his deposition that he had not analyzed any products other than those sold through the retail channel.  (Dep. of William Rosenblatt at 124:16-125:1, Ex. 2.)

At trial, Mr. Rosenblatt again limited his infringement proof to **retail** products that he had obtained and installed himself on computers.  No portion of his infringement testimony related to Product Activation sold through any Microsoft OEM or volume licensing channel.  (*See also* 4/12/06 Trial Tr. at 146:21-25 ("Well, I think what I've opined is that they all infringe.  **I've just actually just discussed products available through retail** as opposed to products that are available through, for example, university academic licensing or whatever." (emphasis added)), Ex. 3.)  Moreover, at trial z4 introduced into evidence an interrogatory response that makes clear that products sold through the volume licensing channel do not even use Product Activation and that the vast majority of products sold by OEMs likewise do not include Product Activation.  (4/18/06 Trial Tr. at 104:4-105:2, Ex. 4.)[1]  Significantly, there is no evidence, none, on how Product Activation is implemented for any product sold through a Microsoft OEM.

---

[1] z4 read the following interrogatory response into evidence, which makes clear that volume and OEM licenses do not use Product Activation:  "If by sold, z4 is referring to Microsoft's licensing of its software products, and if by activated z4 is referring to specific product activation technology it accuses of infringement, then Microsoft responds as follows:  For any accused product that actually uses the accused product activation technology, for purposes of the patents-in-suit, the steps of the product activation are the same whether the accused product is licensed or activated in the United States or in another country.  As in **the United States, all of the accused products licensed outside of the United States through the volume licensing channel do in not use product activation and most of the accused products license through the OEM channel likewise do not use product activation**.  Outside of the United States it is primarily accused products sold through the retail channel that used product activation."  (4/18/06 Trial Tr. 104:11-105:2 (emphasis added), Ex. 4.)

As this interrogatory response indicates, over 80% of the accused products sold through the OEM channel do not use Product Activation.  These OEM resellers are called "Royalty OEMs" and consist of companies such as Dell, Toshiba, Sony, etc.

Given the absence of any evidence relating to infringement or non-infringement of products sold through anything other than the retail channel, there can be no damages assignable due to the sale of these products. *See* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate **for the infringement** . . . ." (emphasis added)). In light of the complete absence of proof on this issue, the jury should have been instructed to disregard these sales for which there was no evidence. As these OEM sales represent over 40% of the licenses for the accused products, the jury's award of damages is unfounded. For these reasons, the jury's finding of damages related to these products for which there is no proof of infringement is unreasonable and the Court should grant this motion for judgment as a matter of law regarding the damages associated with these products.

**B.      Judgment as a Matter of Law is Required Because Each of the Asserted Claims is Either not Infringed or Invalid as a Matter of Law.**

In addition to this motion for JMOL, Microsoft has moved for JMOL regarding non-infringement and invalidity. If either of these motions is granted and the Court finds that the asserted claims are either invalid or not infringed or even changed in scope as a matter of law, then Microsoft is entitled to judgment as a matter of law vacating the jury's finding of damages against Microsoft. *See, e.g., Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 974 (Fed. Cir. 1999) (reversing finding of infringement under proper claim construction and vacating damages award).

**C.      Judgment as a Matter of Law is Required Because No Reasonable Jury Could Conclude that Microsoft's Infringement Was Willful.**

In *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1342 (Fed. Cir. 2004) (en banc), the Federal Circuit held that willfulness is determined from the totality of the circumstances and may include contributions of several factors, as compiled, *e.g., in Rolls-Royce Ltd. v. GTE Valeron Corp.,* 800 F.2d 1101, 1110 (Fed. Cir. 1986) and *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826-27 (Fed. Cir. 1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995) (en banc). Whether an act is "willful" is by definition a question of the actor's **intent***,* the answer to which must be inferred

**MICROSOFT'S MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING DAMAGES, NON-RETAIL PRODUCTS, AND WILLLFULNESS  - PAGE 3**

from all the circumstances. *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510-11 (Fed. Cir. 1990) (emphasis in original).

It is well settled that the patentee must prove willfulness by clear and convincing evidence. *Gustafson,* 897 F.2d at 510. There is no evidentiary presumption that every infringement is willful. *Norian v. Stryker Corp.*, 363 F.3d 1321, 1332 (Fed. Cir. 2004). Willful infringement is not established by the simple fact of infringement, even where the accused infringer has knowledge of the patents. *Id.* The patentee must present threshold evidence of culpable behavior before the burden of production shifts to the accused to put on evidence that it acted with due care. *Id.*

JMOL is warranted here because no reasonable jury could conclude that Microsoft's infringement was willful. First, the jury applied the wrong legal standard in reaching its willfulness verdict. As set forth in Microsoft's motion for new trial, the jury instruction on willfulness was erroneous because it put undue weight on the opinion of counsel. The jury instruction failed to discuss in a similar manner the other factors relevant to willfulness.

z4 also failed to present clear and convincing evidence of willfulness. There is no evidence that Microsoft deliberately copied z4's alleged inventions. *See Read,* 970 F.2d at 827 (copying is factor relevant to willfulness determination). To the contrary, Mr. Aidan Hughes, a software development lead for Microsoft's product activation technology, testified that Microsoft invented and commercialized its product activation technology before the asserted patents were even filed. (4/17/06 Trial Tr. at 75:14-24, Ex. 5.) In fact, Microsoft's Brazilian Publisher 98 predated the asserted patents and thus, formed the basis for one of Microsoft's invalidity defenses. (*Id.*; *see also, e.g.*, 4/18/06 Trial Tr. at 271:13-272:13, Ex. 4.) Moreover, there is no evidence that anyone at Microsoft had ever heard of either David Colvin or z4 before the accused Product Activation technology was finished and on sale to the public.

Relying on the testimony of Ms. Susan Cole, Microsoft's corporate representative, z4 tried to show that Microsoft did not have an opinion as to its defenses. As set forth in Microsoft's motion for new trial, Ms. Cole's testimony should have been excluded from

**MICROSOFT'S MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING DAMAGES, NON-RETAIL PRODUCTS, AND WILLFULNESS  - PAGE 4**

evidence as unfairly prejudicial.[2]  Nevertheless, Ms. Cole's testimony does not support the jury's finding of willfulness.  Although Ms. Cole testified that she was not in a position to state a legal opinion regarding Microsoft's noninfringement and invalidity defenses, she explained that she was not an attorney and that there were documents that set forth Microsoft's legal positions. (4/13/06 Trial Tr. at 13:6-8 & 14:20-21, Ex. 6.)  This was entirely consistent with Judge Guthrie's discovery order, which did not require Ms. Cole, a fact witness with no training in the complex law of patents, to give opinions on complex legal issues such as noninfringement and invalidity.  (Order Denying z4's Mot. for Sanctions dated 12/8/05, Docket No. 115, Ex. 7.)

Moreover, the fact that Ms. Cole did not state an opinion regarding Microsoft's noninfringement and invalidity defenses does not mean that Microsoft did not have an opinion on those issues.  As discussed below, Microsoft had a good faith belief that it did not infringe and that the asserted patents were invalid.  Even if Ms. Cole's inability as a non-lawyer to state an opinion on legal issues could somehow be attributable to Microsoft, her testimony on that issue is insufficient to serve as a basis for willfulness.  In *Knorr-Bremse,* the Federal Circuit held that there is no legal duty to consult with counsel, such that the failure to do so will provide an inference or evidentiary presumption that such opinion would have been negative.  383 F.3d at 1347.  The only possible effect of Ms. Cole's testimony would have been to lead the jury to draw just the sort of negative inference against Microsoft that the Federal Circuit banned in *Knorr-Bremse*.

Microsoft, on the other hand, presented substantial evidence showing that it acted with due care and had a good faith belief of its defenses with respect to the asserted patents.  *Knorr-Bremse,* 383 F.3d at 1347 (existence of a substantial defense is a factor to consider in analyzing whether infringement was willful).  Exercising due care, a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being

---

[2] The jury apparently gave this misleading and unfairly prejudicial testimony great weight because it was the only testimony the jury requested to review during deliberations.  (4/18/06 Trial Tr. at 285:18- 290:3 (discussing the jury's note requesting Susan Cole's deposition testimony), Ex. 4.)

found on that basis alone a willful infringer. *Gustafson,* 897 F.2d at 511.  That such a defense proves unsuccessful does not establish that infringement was willful.  *Id.*

Turning first to the '825 patent, there is no evidence at all that Microsoft had knowledge of that patent, which issued on August 31, 2004, before z4 filed its complaint on September 22, 2004.  Microsoft's knowledge of the pending patent application that later issued as the '825 patent does not constitute sufficient notice for willfulness.  "To willfully infringe *a patent*, the patent must exist and one must have knowledge of it."  *State Indus., Inc. v. A.O. Smith Corp.,* 751 F.2d 1226, 1236 (Fed. Cir. 1985) (emphasis in original).  In *State Indus.,* the Federal Circuit recognized that "[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents.  What the scope of claims in patents that do issue will be is something totally unforeseeable."  *Id.*; *see also Conopco, Inc. v. May Dep't Stores Co.,* 46 F.3d  1556, 1562-63 (Fed. Cir. 1994) (infringer's activities before issuance of patent, although undertaken with knowledge that patent application was pending, were insufficient to support finding of willfulness).  Accordingly, Microsoft did not have a duty of due care regarding the '825 patent until this suit began.

Microsoft exercised due care after learning of the '825 patent.  After reviewing z4's complaint, Microsoft promptly hired litigation counsel to defend against z4's claims.  Microsoft had substantial defenses with respect to noninfringement, invalidity, and inequitable conduct.  As discussed above, there is no evidence of copying of the '825 patent, and Microsoft invented and commercialized its product activation technology before the '825 patent was filed or Colvin ever approached Microsoft.  (4/17/06 Trial Tr. at 75:14-24, Ex. 5.)  In addition, Microsoft's own product – Brazilian Publisher 98 –  predated the '825 patent and thus, formed the basis for one of Microsoft's invalidity defenses.  (*Id.*; *see also, e.g.*, 4/18/06 Trial Tr. at 271:13-272:13, Ex. 4.)

Regarding the '471 patent, Microsoft had knowledge of that patent before this suit began.  Nevertheless, Microsoft presented substantial evidence showing that it acted with due care and had a good faith belief of its defenses with respect to that patent.  As with the '825 patent, there is no evidence of copying of the '471 patent, and Microsoft invented and commercialized its

**MICROSOFT'S MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING DAMAGES, NON-RETAIL PRODUCTS, AND WILLFULNESS  - PAGE 6**

product activation technology long before the '471 patent was ever filed.  (4/17/06 Trial Tr. at 75:14-24, Ex. 5.)  Likewise, Microsoft's own product – Brazilian Publisher 98 – predated the '471 patent and thus, formed the basis for one of Microsoft's invalidity defenses.  (*Id.*; *see also, e.g.*, 4/18/06 Trial Tr. at 271:13-272:13, Ex. 4.)

Finally, there has been no allegation or finding that Microsoft's defenses were frivolous.  This was a hard-fought case with complex legal, technical, and factual issues.  *See Read,* 970 F.2d at 827 (closeness of case is factor relevant to willfulness determination).  Because there is no legally sufficient evidentiary basis for a reasonable jury to find willfulness, the jury's verdict of willfulness cannot stand.

> **D.    Judgment as a Matter of Law is Required Because No Reasonable Jury Could Conclude that the Award of $115 Million in Damages was Warranted.**

The only arguable evidence of damages in an amount in excess of $5 million was the testimony of Mr. Walter Bratic.  This testimony, however, was legally insufficient.  First, the vast majority of Bratic's testimony should have been excluded from evidence as contrary to the Court's rulings regarding the Defendants' motions *in limine*.  Prior to trial, the Defendants received a definitive ruling regarding the scope of the testimony of any expert, including Bratic.  (*See* 3/23/06 Pretrial Tr. at 43:2-5, Ex. 1.)  This ruling explicitly limited the expert testimony to that which was disclosed in expert reports and the depositions conducted of the experts in this case[3].  (*Id.*, Ex. 1.)  As such, the Defendants were not required to renew their objection to this improper testimony at trial.  Fed. R. Evid. § 103 ("Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.")  Nevertheless, the Defendants did object to the introduction of these undisclosed opinions.  (*See, e.g.*, 4/13/06 Trial Tr. at 46:9-48:2 & 64:16-23, Ex. 6.)  Still, Bratic's testimony regarding Microsoft's growth in sales, which was not contained in his expert report, was improperly admitted over the Court's own rulings.  (*See id.*, Ex. 6)  Moreover, the jury could not have relied on any quantifiable

evidence of z4's damages, such as the revenue or license numbers for the accused products, because z4 did not even introduce into evidence this information.  (*See generally* 4/13/06 Trial Tr. 19:11-73:12, Ex. 6.)  Finally, Bratic's testimony is flawed because it does not provide any legitimate support for a reasonable royalty but merely (1) highlights that Microsoft's revenue grew during the period of alleged infringement, which was undisclosed in his expert report, and (2) exposes that Bratic's royalty calculation was based upon a lost profits model, which is one of the few things that was disclosed in his expert report.  Bratic's error in improperly using this lost profits model is compounded as it is based on z4's speculative business plans that envision a fully functioning and supported product that never existed, and that z4 was incapable of producing.

First, Bratic's testimony does not reflect what a reasonable royalty would be, but merely argues that Microsoft's profits[4] were in excess of the reasonable royalty that he assigned. (4/13/06 Trial Tr. at 66:17-67:12, Ex. 6.)  During his discussion of Microsoft's revenue benefit, Bratic stated that he had assumed there was 19% growth due to the use of the infringing

---

[3] Although the ruling limited experts to their expert reports and the depositions of experts conducted in this litigation, Bratic was not deposed in this case and he is limited to the opinions contained in his expert reports.

[4] In this way Bratic's analysis attempts to resurrect a method of computing damages that has long since been abandoned.  *Compare* 35 U.S.C. § 284 (2004) *with* 35 U.S.C. §§ 67 and 70 (1946).  When Congress abolished the infringer's profits as a measure of damages, it appeared to consider just the situation before this Court.  Representative Henry framed the problem of using the infringer's profits to apportion damages as follows:

> Now, however, by far the greater number of patents that are in litigation are on special and often relatively insignificant parts of complex structures to which the patented feature is so related that it is absolutely impossible to apportion the profits due to the invention, those being the only profits to which the patentee is entitled.

Hearings on H.R. 5231 (later reported as H.R. 5311). Before the House Comm. on Patents, 79th Cong., 2d Sess. 2-3 (1946)

Representative Henry continued: "The result is that there is a complete failure of justice in almost every case in which supposed profits are recovered or recoverable."  *Id.*  For these reasons, Bratic's attempts to base damages on Microsoft's profits is unreasonable and results in exactly the injustice that Congress sought to avoid when it amended the statutes and created the remedies under 35 U.S.C. § 284.

**MICROSOFT'S MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING DAMAGES, NON-RETAIL PRODUCTS, AND WILLFULNESS  - PAGE 8**

technology.[5]  (4/13/06 Trial Tr. at 65:5-21, Ex. 6.)  Nowhere did Bratic consider any other

possible source of growth in revenue.  In fact there was evidence that directly contradicted this

assumption.  Despite the fact that Microsoft's revenues grew across the board during the period

of alleged infringement, the rate of this growth actually decreased.  (4/17/06 Trial Tr. at 303:19-

304:20, Ex. 5.)  Logically, if the patents-in-suit generated the revenue growth that Bratic

assumed, this rate of revenue growth would have increased during the period of alleged

infringement.  (*Id., Ex. 5.*)  As the Federal Circuit rhetorically inquired in *American Original*

*Corp. v. Jenkins Food Corp.*, "if the [patented] process produced the significant cost savings that

[the patentee] ascribes to it, one wonders why, when [the patentee] offered a license under the []

patent to the members of the [relevant] industry, no one in the industry took a license and

apparently only one person even responded to the offer."  774 F.2d 459, 463 (Fed. Cir. 1985).

There is no evidence for the substantial revenue gains ascribed to the apparatus and method

described by the patents-in-suit other than Bratic's speculation.[6]  Moreover, even Bratic's

speculation makes no attempt to determine and compare the growth of the products that include

the accused technology versus those that did not.  For example, z4 did not compare the growth of

the volume licensing channel, which does not contain Product Activation, with the retail channel,

which does.  Finally, if the revenue gains that Bratic attributes to the patents-in-suit were

appreciable, one would assume that of the multiple parties that z4 approached, one would have

taken a license, bought the portfolio, or entered a joint venture.  The fact remains that none did.

(4/11/06 Trial Tr. at 184:7-186:25, Ex. 8; 4/13/06 Trial Tr. at 89:4-91:5, Ex. 6.)  *See also Am.*

---

[5] It must be noted that Bratic did not even perform the correct mathematical calculation on the stand.  In order to determine Microsoft's benefit, he just multiplied his assumed 19% growth rate times Microsoft's aggregate revenues for the allegedly infringing period (i.e., .19x$39,000,000,000).  (*See* 4/13/06 Trial Tr. at 65:16-21, Ex. 6.)  This is improper.  If one assumes that there was 19% growth, the appropriate calculation is $39,000,000,000 divided by 1.19, which is approximately 32,800,000,000.  This amount must then be deducted from the aggregate revenue amount to determine the assumed growth in revenue.

[6] The prejudicial speculation was only exacerbated by counsel for z4 during closing arguments when he effectively argued for punitive damages to be levied against Microsoft based on the **total revenue** that Microsoft had generated in 2005, the **total revenue** that Microsoft had generated on a daily basis and the **total revenue** that Microsoft had generated during the course of the trial.  (4/18/06 Trial Tr. at 218:5-20, Ex. 4.)

**MICROSOFT'S MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING DAMAGES, NON-RETAIL PRODUCTS, AND WILLFULNESS  - PAGE 9**

*Original*, 774 F.2d at 463.  In fact, not a single party that z4 approached even responded with a counter-offer to z4's proposal.  (4/11/06 Trial Tr. at 186:24-25, Ex. 8; 4/13/06 Trial Tr. at 91:6-13, Ex. 6.)

Second, the only testimony from Bratic was based on a "lost profits" model.  z4, however, was not seeking damages based on lost profits, but rather a reasonable royalty as z4 has never produced a product that implemented the patents-in-suit or, in fact, any product at all. (4/11/06 Trial Tr. at 187:8-13, Ex. 8.)  The Federal Circuit has held that a party seeking damages based on a reasonable royalty cannot "'bootstrap evidence of its lost profits back into the case by reference to 'reasonable royalties.'"  *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1308 (Fed. Cir. 1999).  This is exactly what Bratic did here when he relied on z4's business plans as a basis for damages.  (4/13/06 Trial Tr. at 97:11-98:19, Ex. 6.)  Furthermore, this inappropriate bootstrapping of evidence is compounded because it assumes damages based on the speculative business plans that assumed the production of an actual product.  *See Mostly Media, Inc. v. U.S. West Communications*, 186 F.3d 864, 867 (8th Cir. 1999) (rejecting lost profits analysis that relied on business plans that "were nothing more than optimistic projection for an enterprise that never got off the ground"); s*ee also Carbo Ceramics, Inc. v. Keefe*, No. 04-20873, 2006 WL 197340, at *8 (5th Cir. Jan. 26, 2006) ("It is undisputed that [the party] has neither built a plant nor produced a product.  Hence, any damage model based on speculative revenues and operating profit from an unbuilt plant, is in and of itself, inherently speculative.") (unpublished).  Given this complete failure to provide any competent, admissible evidence, the jury's damages assigned against Microsoft are improper as wholly unsupported by the evidence and the Court should remit the damages, if any, to a reasonable royalty of $5 million.

## IV.    CONCLUSION

For the foregoing reasons, the Court should vacate the jury's verdict and find as a matter of law (1) that there was no evidence of damages due to the infringement of any products outside the retail channel, (2) that Microsoft's infringement, if any, was not willful due to its good faith

defenses to infringement and its consistent use of the technology prior to awareness of or

issuance of either of the patents-in-suit, and (3) that the damages assigned against Microsoft are

not supported by the evidence and grant judgment as a matter of law that Microsoft was not

willful and remit damages, if any, to a reasonable royalty of $5 million in light of the evidence.

Dated:  May 1, 2006                                    Respectfully submitted,

                                                       FISH & RICHARDSON P.C.


                                                       By:  /s/ Seth M. Sproul
                                                            _____
                                                            Jennifer P. Ainsworth
                                                            WILSON SHEEHY KNOWLES
                                                            ROBERTSON & CORNELIUS, P.C.
                                                            909 ESE Loop 323, Suite 400
                                                            Tyler, Texas  75701
                                                            Tel:   (903) 509-5000
                                                            Fax:  (903) 509-5091
                                                            Attorneys for Defendant Microsoft
                                                            Corporation

                                                            John E. Gartman (CA SBN 152300)
                                                            **Lead Attorney**
                                                            Matthew C. Bernstein (CA SBN 199240)
                                                            Seth M. Sproul (CA SBN 215919)
                                                            FISH & RICHARDSON P.C.
                                                            12390 El Camino Real
                                                            San Diego, California  92130
                                                            Tel:  (858) 678-5070
                                                            Fax: (858) 678-5099

                                                       Counsel for Defendant
                                                       MICROSOFT CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM-ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by facsimile transmission and/or first class mail this 1st day of May 2006.


/s/ Seth M. Sproul


10625110.doc